IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA

*Newport News Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 4:21-cr-24 |
| | ) | |
| D'CARLO NIMIS DELUCA, | ) | |
| a/k/a "Robert Curtis Clark" | ) | |
| | ) | |
| Defendant. | ) | |

POSITION OF UNITED STATES ON SENTENCING

In accordance with 18 U.S.C. § 3553(a) and the United States Sentencing Commission, *Guidelines Manual,* § 6A1.2, the United States of America, through its attorneys, Jessica D. Aber, United States Attorney for the Eastern District of Virginia, D. Mack Coleman, Assistant United States Attorney, hereby represents that it has reviewed the probation office's presentence report (hereinafter "PSR") and that it does not dispute any of the facts set forth therein. For the reasons to follow, as well as those to be offered during the sentencing hearing, the United States respectfully requests that the Court impose a sentence of 40 months of incarceration. A 40-month sentence, which is in the middle of the advisory guideline range, is the minimum necessary to fulfill the statutory mandate in 18 U.S.C. § 3553(a) to impose a sentence "sufficient but not greater than necessary."

BACKGROUND

A. <u>Threats to Langley Air Force Base</u>

On March 22, 2021, the defendant was charged by criminal complaint. A grand jury sitting in the Newport News Division of the Eastern District of Virginia later returned an indictment on April 23, 2021, charging the defendant with two counts of false information and

hoax, in violation of 18 U.S.C. § 1038(a)(1). (ECF No. 1.) The indictment followed and stemmed from the defendant making a series of bomb threats to Langley Air Force Base on or about February 22, 2021.

At approximately 6:32 a.m. on or about February 22, 2021, the defendant called the New York Police Department (NYPD) and threatened to "blow up" Langley Air Force Base. (SOF ¶ 4.) Following this call, NYPD contacted Langley's Base Defense Operations Center and notified them of the threat. (SOF ¶ 4.) About 11 minutes later at 6:43 a.m., the defendant called Langley Air Force Base and reported there was a bomb in a building on the base. (SOF ¶ 5.) The call was received by the Langley Air Force Base Hunt Housing Emergency Operations Center. (SOF ¶ 5.) The defendant threatened that there was a "bomb in the building" and then disconnected the line. (SOF ¶ 6.) As a result of these first two threats, Langley Air Force Base was forced to clear portions of the base and expend resources, time, and energy to ensure the area was safe. (SOF ¶ 7.)

Investigators traced the assigned cellular telephone number used to convey these threats to (347) ***-0041. The defendant was the registered subscriber for this telephone number. (SOF ¶ 8.) They also identified the location of the device used to make the threatening call, which was found to be within approximately 40 meters of the defendant's then address, 560 West 184th Street, Unit ***, New York, New York 10033. (SOF ¶ 9.)

The defendant was not done after two threats. At approximately 12:51 p.m., he called Langley Air Force Base, but quickly disconnected the line. An employee of the base returned his call at approximately 12:53 p.m. and he said, "this is a bomb threat" before abruptly disconnecting the line again. (SOF ¶ 10.) Base operations were again disrupted because of the defendant's threat. Langley Air Force Base cleared portions of the base again and expended

more resources and time to ensure the area was safe. (SOF ¶ 11.)

B. <u>The Defendant's History of Making Bomb Threats and New York Prosecution</u>

On July 10, 2020, the defendant pleaded guilty to obstructing a restricted building in the Southern District of New York – a Class A misdemeanor as set forth in 18 U.S.C. § 1752(A)(3). The threats to which he pleaded guilty were to Trump Tower, located at 721 Fifth Avenue in New York, New York and the White House, located at 1600 Pennsylvania Avenue, N.W. in Washington, District of Columbia. (PSR ¶ 31.)[1]

Between February 2019 and June 20219, the defendant called the NYPD through 9-1-1 calls at least 20 times to report recent or imminent emergency activity. (PSR ¶ 31.) These threats escalated over time:

- May 27, 2019: the defendant called 9-1-1 and stated that the Latin Kings and MS-13 were threatening the President.

- May 29, 2019: the defendant made a bomb threat to Trump National Golf Course Bedminster.

- June 2, 2019: the defendant reported a fire at Trump National Golf Club Bedminster.

- June 10, 2019: the defendant reported a bomb threat to Trump Tower and said persons affiliated with MS-13 were planning to blow up Trump Tower and the White House, and that the First Lady was in jeopardy.

- June 10, 2019: the defendant reported a threat to kill the then Press Secretary Sarah Sanders.

- June 11, 2019: the defendant reported a threat to kill the First Lady at Trump Tower.

- June 15, 2019: the defendant threatened to kill the President.

- June 20, 2019: the defendant said he was a member of a terrorist organization who

---

[1] The United States can provide copies to the Court of the defendant's PSR and/or SRV petition from the Southern District of New York as needed. These documents contain more details about the defendant's history of making bomb threats.

was planning to blow up Trump Tower.

(PSR ¶ 31.) The threats made on June 20, 2019, resulted in the United States Secret Service and law enforcement conducting a sweep for explosives at Trump Tower. The defendant also made other bomb threats to a Gay Men's Health Center in New York, reported a fire at the federal courthouse in New York, reported bomb threats to the same courthouse, reported bomb threats to Riker's Island, and made six threats to kill the President of the United States. (PSR ¶ 31.)

On July 29, 2019, the defendant made his initial appearance in the Southern District of New York. He was released on conditions that he not make further bomb threats. He repeatedly and flagrantly violated that condition. Troublingly, the defendant's threats also escalated with the defendant taking action to carry out one such threat. On or about March 10, 2020, the defendant texted a tip line for law enforcement in the District of Columbia a message saying "SUSPICIOUS narc packages" with two attached images, including an image of the purchase of a pressure cooker from Amazon. (PSR ¶ 31.) On March 14, 2020, the defendant texted the same tip line "Ka boom loca en la cabezza" and "Ka boom." (PSR ¶ 31.) The defendant was arrested on March 17, 2020. Law enforcement found a pressure cooker in plain view matching the pressure cooker from the images sent to the tip line in the District of Columbia.

While on pretrial release, the defendant made 48 phone calls to 9-1-1 between March 18, 2020, and May 3, 2020, that included calls reporting bomb threats to the World Trade Center that trigged ten responses from law enforcement and fire personnel. His bond was subsequently revoked, and he was detained until his release in October 2020.

Beyond the threats charged in the Eastern District of Virginia, the defendant continued to make other bomb threats. On February 12, 2021, February 13, 2021, and February 16, 2021,

the defendant made threats to law enforcement about killing President Biden.[2] (PSR ¶ 31.) He also made other threats in February 2021. The Southern District of New York ordered the defendant to complete intensive outpatient treatment for 60 days. (PSR ¶ 31.) Despite being given this opportunity, the defendant was arrested trying to enter the federal courthouse in Manhattan on April 6, 2021, in possession of 3.32 grams of methamphetamines, a dinner knife, and a digital scale. (PSR ¶ 7.)

C. The Defendant's History and Characteristics

The Probation Department attributed the defendant with 12 criminal history points, resulting in a criminal history category of V – the second highest under the advisory guidelines. (PSR ¶ 32-34.) He was previously convicted of conspiring to distribute approximately 500 grams of methamphetamines between 2004 and 2005 in SDNY. (PSR ¶ 28.) The defendant was sentenced to 16 months of incarceration and later had his supervised release revoked because he was distributing more illegal drugs. (PSR ¶ 28.)

In June 2017, the defendant's mother called the police in Fresno County, California, and reported that the defendant had stopped taking his medication and was using illegal drugs. (PSR ¶ 30.) When the police responded, the defendant was verbally abusive. He later exposed his penis and told the officer, "Look at it, you probably love it." (PSR ¶ 30.) The defendant then grabbed his penis a manner consistent with beginning to masturbate. (PSR ¶ 30.) When officers went to arrest the defendant, he pulled away and began to fight with them, punching one of the officers with a closed fist at least twice. (PSR ¶ 30.)

The defendant reports having a troubling childhood, including having been sexually

---

[2] Among other things, these threats are the subject of the defendant's SRV petition pending in SDNY.

assaulted by a deacon in his stepfather's church.[3] Unlike many defendants who come before this Court, the defendant reported that none of his other family members have a criminal record or history of substance abuse (with the exception of extended family members who abuse marijuana and heroin). (PSR ¶ 44.)

As an adult, the defendant ostensibly had an ordinary, law-abiding life until about 2004. He graduated from high school and completed some college credits. (PSR ¶ 77-80.) He was married and had two children. (PSR ¶ 45.) He reports having worked in impressive jobs at Pfizer Pharmaceuticals and Concentra in New York where he earned approximately $140,000 annually. (PSR ¶ 84-85.) The defendant seems to have begun using drugs in or about 2004. He admits to some of this drug use, including marijuana, cocaine, and methamphetamine. (PSR ¶ 74.) This lines up with his subsequent felony drug conviction in 2005-2006 in the Southern District of New York (and later supervised release revocation for drug distribution again). (PSR ¶ 28.)

The defendant has a number of medical and mental health issues. He has been HIV positive since 2008, but this condition seems well-managed with medication. (PSR ¶ 50.) He also suffers from anal dysplasia (a pre-cancerous medical condition), seizures, arthritis, acid reflux, and high blood pressure. (PSR ¶ 50-52.) He has a long history of anxiety, depression, and other mental health problems like bipolar disorder, post-traumatic stress disorder, and schizoaffective disorder. (PSR ¶ 54-73.) He currently takes Buspar, Sertraline, Geodon, and Zoloft while in custody at Western Tidewater Regional Jail. (PSR ¶ 73.)

---

[3] It is difficult to evaluate whether these reports are accurate. The defendant also reports having used methamphetamines only once when he was 40 years old despite having been (i) convicted for distributing more than 500 grams methamphetamines; and (ii) having been arrested in April 2021 with methamphetamines and a scale.

POSITION ON SENTENCING AND ARGUMENT

The United States recognizes that a sentencing court may not presume that a sentence within the advisory guideline range is reasonable; however, the guidelines remain a significant and pivotal component of the sentencing process. The Court "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter." *Nelson v. United States*, 129 S. Ct. 890, 891-92 (2009). Title 18, UnitedStates Code, Section 3553(a)(1) provides that, in determining a sentence, courts must consider the nature and circumstances of the offense, as well as the history and characteristics of the defendant. The United States respectfully requests that the Court impose a sentence of 40 months of incarceration. Such a sentence – in the middle of the advisory guideline range – strikes a balance between the defendant's mitigating health issues and the seriousness of his offense.

*First*, the nature and circumstances of the offense are extremely serious. The defendant made three separate threats to blow up Langley Air Force Base in Hampton, Virginia, which resulted in a substantial disruption of base operations. Law enforcement and emergency personnel were forced to evacuate and then clear portions of the base on two separate occasions on the same working day. There is no rational explanation for the defendant's conduct – except the utter disregard for how his actions affect others. Standing in isolation, the defendant's crime would be serious. In context, it is even more troubling. The defendant was under federal court supervision for having made dozens of other bomb threats to federal officials, public facilities, and other prominent figures at the time he made these threats to Langley Air Force Base. The United States and the Court in New York have extended a great deal of patience and

7

leniency on the defendant. They have tried to order mental health treatment and other programming to no avail. The defendant continues to engage in this conduct without regard for the law or how his threats affect others. Most troublingly, the defendant appears to have escalated his conduct in March 2020 by purchasing a pressure cooker on Amazon – all the while making threats to law enforcement tip lines about the same. To date, the defendant has not acted on his threats, but this conduct causes the government great concern.

*Second*, the defendant's history and characteristics cut both ways. His mental and physical health issues are certainly mitigating. However, he has a long criminal history, reflecting a sustained disregard for the rule of law and court supervision. He has two prior federal convictions, including one for making bomb threats, and has twice had his supervised released revoked. The United States has no confidence that this defendant will not reoffend upon release. Unfortunately, the defendant's mental health issues appear to contribute to his problems with drug addiction and his proclivity for making bomb threats and fighting with law enforcement.

*Third,* the defendant did not promptly confess to law enforcement. In or about April 2021, the defendant was arrested trying to enter the federal courthouse in New York with drugs and other drug paraphernalia. He did not admit to making bomb threats to Langley Air Force Base. He contested his pretrial detention and was transported to the Eastern District of Virginia in May 2021 by the United States Marshal Service. The defendant pleaded guilty in late August 2021 – after he was examined and determined competent.

*Fourth,* there is a need for just punishment and to protect the public. The defendant's threats – even when unfulfilled – result in a substantial drain on public resources. There is also the ever-present risk the defendant acts on his threats. Incarcerating the defendant for a

significant period will remove him from the community and protect those individuals who would suffer from his antics.

*Fifth,* the Court should consider general and specific deterrence. On the issue of general deterrence, the public must have confidence that the activities of the defendant are treated with the utmost seriousness. The public must look at the actions of the defendant and know that such conduct cannot be tolerated. Individuals inclined to consider committing crimes like those of the defendant must be made to pause in thinking about the consequences that follow. As for specific deterrence, this defendant has demonstrated time and again that he will not be deterred by lenient sentences. A sentence at the heart of the advisory guideline range is necessary to deter the defendant.

## CONCLUSION

The public must be protected from the defendant. Mental health services and lenient sentences have not succeeded in preventing the defendant from engaging in more of the same. In New York, the defendant has been ordered to participate in at least three treatment programs to no avail. A sentence of 40 months of incarceration strikes a proper balance between the defendant's mitigating history and characteristics and the offense conduct before the Court. For the foregoing reasons and others to be provided during the sentencing hearing, the United States respectfully requests a sentence in the middle of the advisory guideline range.

        Respectfully submitted,

        Jessica D. Aber
        United States Attorney

By:              /s/
        D. Mack Coleman
        Assistant United States Attorney
        Eastern District of Virginia
        Newport News Division
        Fountain Plaza Three, Suite 300
        721 Lakefront Commons
        Newport News, Virginia 23606
        Tel. (757) 591-4000
        Fax: (757) 591-0866
        mack.coleman@usdoj.gov

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of January 2022, I electronically filed theforegoing with the Clerk of Court using the CM/ECF system, which will send an electronic notification of such filing to the following:

    Rodolfo Cejas, II
    Federal Public Defender
    150 Boush Street, Suite 403
    Norfolk, Virginia 23510
    Tel. (757) 457-0885

I HEREBY CERTIFY that on this 28th day of January 2022, I sent a true and correctcopy of the foregoing to the following by electronic mail:

    Jeffrey A Noll
    Senior U.S. Probation Officer
    U.S. District Courthouse
    827 Diligence Drive, Suite 210
    Newport News, Virginia 23606
    (757) 223-4663

                                                /s/
                                    D. Mack Coleman
                                    Assistant United States Attorney
                                    Eastern District of Virginia
                                    Newport News Division
                                    Fountain Plaza Three, Suite 300
                                    721 Lakefront Commons
                                    Newport News, Virginia 23606
                                    Tel. (757) 591-4000
                                    Fax: (757) 591-0866
                                    mack.coleman@usdoj.gov